BABY TENDA OF GREATER CINCINNATI, INC. et al., Appellants,

v.

TAFT BROADCASTING COMPANY et al., Appellees.

[Cite as *Baby Tenda of Greater Cincinnati, Inc. v. Taft Broadcasting Co.* (1989), 63 Ohio App.3d 550.]

Court of Appeals of Ohio,
Hamilton County.

No. C-880378.

Decided Oct. 18, 1989.

*Andrew J. McMahon,* for appellants.

*Taft, Stettinius & Hollister* and *R. Joseph Parker,* for appellees.

*Per Curiam.*

Plaintiffs-appellants Baby Tenda of Greater Cincinnati, Inc. ("Baby Tenda") and Bruce Hassel have appealed from the trial court's granting of summary judgment in favor of the defendants-appellees Taft Broadcasting Company, WKRC–TV and Howard Ain in a defamation action (brought against the appellees by the appellants).

Baby Tenda is a corporation engaged in the retail selling of baby furniture. The president of the corporation is Hassel. Baby Tenda began direct mail contact with expectant couples in the spring of 1985, for the purpose of bringing potential customers into the store to view the products of Baby Tenda. To encourage couples to come into the store, Baby Tenda offered gifts. Those who had responded to this offer complained to Howard Ain (WKRC–TV's troubleshooter) about Baby Tenda's sales practices, which required the viewing of a sales presentation before couples could receive "free" gifts. This prompted Ain to begin an investigation. As a result of his investigation, on September 6 and 11, 1985, WKRC–TV aired a two-part "Troubleshooter" report covering Baby Tenda's allegedly illegal sales practices.

Baby Tenda and Hassel brought suit against Taft Broadcasting Company ("TBC"), WKRC–TV and Ain, alleging that the TV reporting by Ain was defamatory. The appellants' complaint alleged, *inter alia,* that Ain's September 6, 1985 broadcast was defamatory due to its false representations that Baby Tenda was guilty of a "consumer rip-off" and of violating Ohio consumer protection laws, and by implying that the Ohio Attorney General had concluded that Baby Tenda had violated these laws. The complaint also alleged that the September 11, 1985 broadcast falsely conveyed the message that the small claims court had been "crowded" with individuals filing suits against Baby Tenda. Appellants filed a motion for partial summary judgment as to the falsity of the first broadcast. The trial court denied the motion. The appellees then filed a motion for summary judgment, which was granted. In their single assignment of error, appellants Baby Tenda and Hassel allege the trial court erred in granting summary judgment for Taft Broadcasting Company and Howard Ain. We are not persuaded.

The law in Ohio regarding private-figure defamation is set forth in *Lansdowne v. Beacon Journal Pub. Co.* (1987), 32 Ohio St.3d 176, 512 N.E.2d 979. In *Lansdowne,* the Ohio Supreme Court held that in private-figure defamation actions, where a prima facie showing of defamation is made by a plaintiff, the plaintiff must prove by clear and convincing evidence that the defendant failed to act reasonably in attempting to discover the truth or falsity or defamatory character of the publication. *Id.* at paragraph one of syllabus.

■ In an action for defamation, the plaintiff's prima facie case is established when he has shown that defendant made a publication to a third person, that the third person understood the defamatory meaning of the publication, and the actionable nature of the words. *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 72 O.O.2d 134, 331 N.E.2d 713; *Beim v. Jemo Assocs., Inc.* (1989), 61 Ohio App.3d 380, 572 N.E.2d 812. Whether the appellants sufficiently established a prima facie showing of defamation is not disputed. Our analysis, therefore, will not address this aspect of *Lansdowne,* but rather will focus on the state of the evidence as it relates to the reasonableness of Ain's efforts to discover the truth or falsity of the broadcasts.

Where, as here, the matter is resolved by summary judgment, Civ.R. 56 provides that summary judgment shall be rendered if the trial court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines:

(1) that no genuine issue of material fact remains to be litigated,

(2) that the moving party is entitled to judgment as a matter of law, and

(3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

In ruling upon a motion for summary judgment, the trial judge must view the evidence presented through the prism of the substantive evidentiary burden. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. Thus, the appropriate summary judgment inquiry in the instant action, in accordance with the law set forth in *Lansdowne, supra,* is whether any reasonable mind could find with convincing clarity that Ain failed to act reasonably in attempting to discover the truth or falsity of the publications. See *Dupler v. Mansfield Journal Co.* (1980), 64 Ohio St.2d 116, 18 O.O.3d 354, 413 N.E.2d 1187. When the evidence *sub judice* is viewed in a light most favorable to Baby Tenda and Hassel, it is not sufficient to withstand the appellees' summary judgment motion.

According to the record, Ain stated in his deposition that his investigation into Baby Tenda's sales practices was prompted by two letters from Kimberly Shipman. Prior to receiving these letters, Ain had received other complaints about the store via telephone from one Mrs. DeSalvo and from Darrel Calloway, a former WKRC–TV employee. Ain stated that the DeSalvo complaint, lodged "way before" the complaints *sub judice,* was essentially unsubstantiated and that he therefore did not feel that an investigation was warranted at that time. Darrel Calloway's complaints, which came after DeSalvo's complaints but before Shipman's, were placed on an "on the hook" board at the television station for future consideration. However, when Ain then received the Shipman letters, he launched his probe into Baby Tenda's sales practices.

Ain testified during his deposition that he interviewed Kimberly Shipman and Darrel Calloway's wife, Lynne Calloway, and that both women informed him that in order to receive their gifts, detailed in the store's letter as "jackpot prizes," they were required to make appointments to visit the company's showroom. According to Ain, he had been told by both women and by Darrel Calloway that they were subjected to a sales presentation before receiving the gifts.

In addition to interviewing these disgruntled consumers, Ain stated that he contacted the Ohio Attorney General's office and discussed with the chief investigator of the Consumer Protection Division, James Stramanos, various provisions of the Ohio Consumer Sales Practices Act and the possibility that Baby Tenda had violated several of the Act's sections. Ain purportedly read the provision of the Shipman's furniture purchase contract relating to attor-

ney's fees to Stramanos. Ain stated that Stramanos indicated that the provision was "nonsense." Ain also stated in his deposition that when he read Baby Tenda's "jackpot prize" notices to Stramanos, Stramanos informed Ain that a deceptive sales act occurs when a company informs consumers that they have won a contest when in fact no contest has ever been held.

Ain further indicated in his deposition that he attempted to interview Hassel in order to present "both sides," but that Hassel refused an on-camera interview. Ain stated that although he did receive a letter from Hassel on the eve of the September 6, 1985 broadcast, Ain decided not to "air" the letter on the broadcast because he felt that the letter was intended as a personal attack on Ain rather than the company's response to the accusations. Ain stated that he did pursue the information Hassel provided in the letter with respect to WKRC–TV newscaster Terry Jessup's visit to the Baby Tenda showroom. Ain asked for an interview with Jessup but Jessup declined.

The second broadcast summarized Baby Tenda's attorney's statement of the store's position that no deceptive sales practices had been committed and that consumers were not required to view sales presentations prior to receiving the prizes. Additionally, Ain stated that when he and his camera crew appeared at the small claims court, several individuals filed suits against Baby Tenda.

Nothing in the record contradicts Ain's statements regarding his investigation into Baby Tenda's sales operation. Neither Stramanos' affidavit nor Jessup's deposition raises genuine issues of material fact regarding whether Ain failed to act reasonably in attempting to discover the truth or falsity of the broadcasts. Stramanos' affidavit merely states that he "could not recall any details of any conversations" he had with Ain "in which Baby Tenda or its sales practices would have been discussed." Likewise, Jessup's deposition states that when Ain stated to Jessup that perhaps Ain should interview him, Jessup "laughed and said 'you're not going to interview me, Howard [Ain].' And that was the extent of it."

On the state of this record, we hold that the trial court properly granted appellees' motion for summary judgment. Appellants' assignment of error is not well taken. The judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., KLUSMEIER and UTZ, JJ., concur.