COOPER, Appellant,

v.

GRACE BAPTIST CHURCH OF COLUMBUS, OHIO, INC. et al., Appellees.

[Cite as *Cooper v. Grace Baptist Church of Columbus, Ohio, Inc.* (1992), 81 Ohio App.3d 728.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1196.

Decided July 9, 1992.

730

*Steve J. Edwards,* for appellant.

*Lyman & Lyman* and *Webster S. Lyman,* for appellee Grace Baptist Church of Columbus, Ohio, Inc.

*Winkfield & Brooks Co., L.P.A.,* and *Walter G. Brooks,* for appellee Ernest Calloway.

---

MARTIN, Judge.

Plaintiff-appellant, Kristol Cooper, timely appeals from the September 20, 1991 judgment of the Franklin County Common Pleas Court which entered directed verdicts in favor of both defendants-appellees, the Grace Baptist Church of Columbus, Ohio, Inc. and Reverend Ernest Calloway.

Plaintiff commenced this defamation action on May 1, 1989, alleging slander *per se* on the part of defendants church and Calloway, individually and in his capacity as pastor. The complaint further alleged that the remarks attributed

to Calloway were made with actual malice and occurred within the scope of his employment. Compensatory and punitive damages both were sought.

Reverend Calloway filed his answer to the complaint on June 13, 1989 in the form of a general denial only. A separate answer was filed by the church on June 14, 1989, which included, *inter alia*, a general denial, a Civ.R. 12(B)(6) defense of failure to state a claim, and a defense of lack of an agency relationship with Calloway. Neither defendant asserted any Civ.R. 8(C) affirmative defenses.

A jury trial commenced on July 29, 1991, and at the conclusion of plaintiff's case-in-chief, the trial court orally granted the separate defendants' motions for directed verdicts in their favor. Civ.R. 50(A). These judgments were subsequently journalized on September 20, 1991. Plaintiff's appeal from that order was filed on October 18, 1991. Plaintiff's posttrial Civ.R. 60(B) and 59 motions were overruled by the trial court on October 23, 1991.

The material facts underlying this action are summarized as follows. Plaintiff, as a member of the church, approached Calloway with the idea of forming a "witnessing committee" to stimulate church membership. The committee was eventually created, and it formulated a three-part program. The second part included a "male chorus festival" to be held at the church in May 1987. In conjunction with this function, plaintiff claimed that he had personally expended roughly $375 for publicity.

A collection was taken during the festival and at least three congregation members first counted the proceeds, $381, that evening. This money was placed in a sealed envelope and given to plaintiff's spouse. On the following Sunday, plaintiff was asked to bring the money to the church on the next day and to account for his expenditures. The envelope was subsequently opened, and the contents recounted to a total of $370. The trial testimony indicated that the envelope did not appear to have been opened until the recount, and that the collection money must have been originally miscounted.

Plaintiff presented his expense receipts, which exceeded the $370 collected. The collection fund was then turned over to plaintiff as reimbursement. Shortly after this incident, the "witnessing committee" was disbanded.

Some time thereafter, the plaintiff attempted to obtain copies from the church of its bylaws, regulations and/or constitution, but without success. He then contacted the Ohio Attorney General's Office, Charitable Foundations Section, for assistance in obtaining these documents. When his January 6, 1989 letter to the defendants went unanswered, Assistant Attorney General James R. McClain telephoned Reverend Calloway. According to Calloway's deposition, during the course of this telephone conversation in mid-January 1989, Calloway stated to McClain that:

" * * * 'Instead of Mr. Cooper coming down to your office and making all of these complaints, the church—' and this is, as I recall, what I said to him, 'What the church could do is to charge him and take him to court with misappropriation of church funds.' * * *'"

It is this remark by Calloway to McClain which forms the basis for plaintiff's lawsuit.

From the trial court's grant of directed verdicts in favor of each defendant, the plaintiff raises five assignments of error:

"1. It was error for the trial court to allow defendants to argue the affirmative defense of privilege since they had not raised the defense in their answer or by motion and raised it for the first time in their motion for a directed verdict at trial.

"2. It was error for the trial court to direct a verdict based on the defense of privilege. No privilege attaches to a statement made to an Assistant Ohio Attorney General when the respondent interjects a slanderous remark about a person that is not related to the subject matter of the telephone call.

"3. It was error for the trial court to sustain defendant's objection to plaintiff's question to defendant Calloway on cross-examination. When a lay witness uses a legal term in his answer, he is competent to answer a follow-up question asking what he meant by his previous answer.

"4. It was error for the trial court to direct a verdict based on that there was no publication and that as a matter of law, plaintiff suffered no damages. A publication to one person is sufficient to state a claim for slander and the amount of damages is for the jury to determine.

"5. It was error for the trial court to direct a verdict in favor of defendant Grace Baptist Church of Columbus, Ohio, Inc., based on defendant Ernest Calloway not being an employee of Grace Baptist Church of Columbus, Ohio, Inc."

Several of the plaintiff's assignments of error relate to the propriety of the trial court's decision to grant directed verdicts to the separate defendants at the close of plaintiff's case-in-chief. A directed verdict at that juncture of the proceedings is clearly permitted under Civ.R. 50(A)(1).

Civ.R. 50(A)(4) provides that:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

Thus, it is the trial court's duty to submit an essential issue to the jury when there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue, and, conversely, to withhold an essential issue from a jury when there is not sufficient evidence on that issue to permit reasonable minds to reach different conclusions. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 427, 280 N.E.2d 896, 899; *Reder v. Antenucci* (1989), 62 Ohio App.3d 139, 574 N.E.2d 1137; *Johnson v. Hammond* (1990), 68 Ohio App.3d 491, 493, 589 N.E.2d 65, 66. A directed verdict is appropriate only where the party opposing it has failed to adduce any evidence on the essential elements of his claim. *Hubner v. Sigall* (1988), 47 Ohio App.3d 15, 16–17, 546 N.E.2d 1337, 1338–1339. The question to be determined involves a testing of the legal sufficiency of the evidence to take the case to the jury, and it is a question of law and not of fact. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141, 142. For this process, the trial court must assume the truth of the evidence essential to the claim, including all reasonable inferences from that evidence; it may not weigh that evidence or try the credibility of the witnesses. *Jenkins v. Morgan* (1988), 57 Ohio App.3d 40, 43–44, 566 N.E.2d 1244, 1247–1248; *TLT–Babcock, Inc. v. Serv. Bolt & Nut Co.* (1984), 16 Ohio App.3d 142, 143, 474 N.E.2d 1223, 1224.

These general principles will guide our examination of the assignments of error relating to the trial court's application of Civ.R. 50(A).

 In the first assignment of error, plaintiff contends that the defendants had not asserted the defense of qualified privilege in their respective answers to his complaint and, therefore, that the trial court erred when it permitted the defendants to argue that issue, for the first time, at trial in support of their directed verdict motions. Civ.R. 8(C), in part, provides that:

"In pleading to a preceding pleading, a party shall set forth affirmatively * * * any other matter constituting an avoidance or affirmative defense."

The list of affirmative defenses in Civ.R. 8(C) is not exhaustive, and the failure to raise such defenses in a responsive pleading or by motion constitutes a waiver of those defenses. *Mitchel v. Borton* (1990), 70 Ohio App.3d 141, 144–145, 590 N.E.2d 832, 834–835. A Civ.R. 12(B)(6) defense contained in an answer is insufficient to raise an affirmative defense required to be separately pleaded. *Mitchel, supra,* headnote three.

 A qualified privilege is an affirmative defense to defamation that must be pleaded separately from a general denial. *Douglas Elec. Corp. v. Grace* (1990), 70 Ohio App.3d 7, 12, 590 N.E.2d 363, 366. In the case *sub judice,* neither of the defendants asserted any Civ.R. 8(C) affirmative defens-

es in their answers, which contained only general denials, and the church's Civ.R. 12(B)(6) defense is insufficient to create the affirmative defense of privilege. By failing to raise the defense of privilege in their pleadings, the defendants waived it.

We are mindful that although Civ.R. 15(B) permits the liberal amendment of pleadings, that rule applies only when an amendment would "conform to the evidence" and when an issue has been tried by either the "express or implied consent of the parties." *State ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 44, 5 OBR 99, 101, 448 N.E.2d 1159, 1161–1162. An implied amendment of pleadings is impermissible where it would result in a substantial prejudice to a party. *Id.* at 45, 5 OBR at 101, 448 N.E.2d at 1162. The record of this case does not support a finding that the unpleaded issue of privilege was tried by the express or implied consent of the parties. The issue was never developed during the course of these proceedings, which concluded at the end of plaintiff's case-in-chief. The Civ.R. 15(B) criteria set forth in *Evans, supra,* at 45–46, 5 OBR at 101–103, 448 N.E.2d at 1162–1163, were not established.

For these reasons, the first assignment of error is sustained.

Plaintiff argues in his second assignment of error that it was improper for the trial court to direct a verdict to either defendant based on the defense of privilege. In light of our disposition of the first assignment of error, the issue of qualified privilege was not properly before the trial court since it was neither pleaded in the responsive pleadings, Civ.R. 8(C), nor tried with the consent of the parties pursuant to Civ.R. 15(B). Accordingly, the second assignment of error is sustained.

In the third assignment of error, plaintiff claims prejudicial error when the trial court sustained a defense objection to a question posed by him to Reverend Calloway on cross-examination:

"Q. What? The inquiry?

"A. —was to maybe take him to court and charge him with misappropriation of funds because he never turned over the money.

"Q. And, when you say charge him, you're talking about charging him with a crime for misappropriating church funds, correct?

"Mr. Brooks: Objection. It calls for a legal conclusion.

"The Court: Sustained."

Earlier at trial, Calloway admitted to making the same remark relating to "misappropriation" of funds to McClain as he had described in his pretrial deposition. While this court is normally reluctant to interfere with evidentia-

ry rulings, since a trial court is vested with broad discretion in the admission or exclusion of evidence, Calloway himself employed the word "misappropriation" to plaintiff's alleged conduct. Since that word is not necessarily a legal term and since it appears to form the basis of plaintiff's defamation action, on cross-examination plaintiff should have been permitted to probe Calloway for its meaning to him in the above follow-up question.

The third assignment of error is sustained.

The fourth assignment of error pertains to the trial court's basing the directed verdicts at least in part on the absence of a publication and, consequently, as matter of law, on the lack of damages. However, from our review of the proceedings it is apparent that plaintiff misconstrued the trial court's reasoning relative to this assignment of error.

In an action for defamation, whether in libel or slander, plaintiff's *prima facie* case is established when he has demonstrated that the defendant made a publication to a third person, that the third person understood the defamatory meaning of the publication, and the actionable character of the words. *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 21 OBR 143, 486 N.E.2d 1220; *Beim v. Jemo Associates, Inc.* (1989), 61 Ohio App.3d 380, 381, 572 N.E.2d 812, 813; *Baby Tenda of Greater Cincinnati, Inc. v. Taft Broadcasting Co.* (1989), 63 Ohio App.3d 550, 551, 579 N.E.2d 522; *Sheets v. Rockwell Internatl. Corp.* (1990), 68 Ohio App.3d 345, 352, 588 N.E.2d 271, 275. Publication is an essential element for the cause of action *sub judice*. The undisputed record shows that the allegation of "misappropriation of funds" was orally published by Reverend Calloway in his telephone conversation with Assistant Attorney General McClain, a third person.

Clearly, the trial court determined that there was a "publication" to a third party, but that court reasoned that this communication between Calloway and McClain was "privileged" and, therefore, not actionable. Because of our treatment of the first and second assignments of error and conclusion that the defense of privilege was not properly before the trial court, we sustain this fourth assignment of error, albeit for a reason different from the manner plaintiff has framed it. If a *prima facie* defamation case is made by a plaintiff, then the amount of damages is a jury issue, and a directed verdict as to damages is improper. *Gibbons v. Price* (1986), 33 Ohio App.3d 4, 14, 514 N.E.2d 127, 136.

Although portions of the trial court record allude to Calloway's alleged publication of other defamatory remarks to the congregation regarding plaintiff's conduct, no direct evidence was presented by the plaintiff to substantiate these assertions with respect to what was said, to whom, when, or what those

persons understood the remarks, if made, to mean. Plaintiff's cause of action appears limited to the single telephone communication between Calloway and McClain.

Last, in his fifth assignment of error, plaintiff claims that the trial court erred in directing a verdict in favor of the church based upon Calloway not being its "employee." Since the doctrine of charitable immunity no longer insulates religious institutions and other nonprofit organizations from tort liability, *Albritton v. Neighborhood Centers Assn.* (1984), 12 Ohio St.3d 210, 12 OBR 295, 466 N.E.2d 867, upon proper factual circumstances a church may now be held liable for its own torts as well as for the tortious acts of its employees/agents imputed to it by the *respondeat superior* doctrine. For *respondeat superior* to apply, the employee/agent must himself be liable for a tort, which was committed in the scope of his employment. *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 217, 527 N.E.2d 1235, 1243. Further, where the tort alleged is an intentional one, the behavior of the employee/agent giving rise to it must be calculated to facilitate or promote the business for which he was employed or engaged. The employer/principal is not liable for the independent, self-serving conduct of its employee/agent which does not so facilitate its business. *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 58–59, 565 N.E.2d 584, 587.

In our case *sub judice*, while plaintiff alleged an employment/agency relationship between defendants Calloway and the church in his complaint, obviously, to invoke the *respondeat superior* doctrine, he never developed the precise nature of that relationship from an evidentiary standpoint at trial. However, construing the limited evidence most strongly in his favor for purposes of the application of Civ.R. 50(A), we will assume *arguendo* that some employment or agency relationship existed between the two defendants.

Certainly, it was within Calloway's scope of employment as a pastor to respond to the Attorney General's investigation relative to the production of the church's bylaws and constitution. On those matters, Calloway had authority to communicate with McClain. However, during the course of that conversation on those legal matters, it was not necessary for Calloway to inject his personal opinions as to plaintiff's alleged misconduct.

At trial, plaintiff did not introduce any evidence that Calloway's gratuitous rendering of his personal evaluation of plaintiff's alleged prior conduct in any way facilitated the church's functions. During his case-in-chief, plaintiff failed to demonstrate that it was within Calloway's scope of employment, or

duties as a minister, to publicly render personal opinions about members of the congregation. No evidence was offered by the plaintiff that Calloway was authorized by the church to make such statements, nor was there evidence before the trial court that the church ratified Calloway's conduct after the fact. 3 Ohio Jurisprudence 3d (1978) 231, Agency, Section 154. The alleged defamatory remarks attributed to Calloway had nothing whatsoever to do with responding to McClain's official inquiry. There certainly was no evidence offered to suggest that Calloway was hired to engage in defamation or other intentional torts toward anyone, within or without the congregation. Additionally, plaintiff failed to show that the church should reasonably have foreseen that Calloway would have behaved in a tortious fashion.

Applying *Byrd, supra,* 57 Ohio St.3d at 59–60, 565 N.E.2d at 587–588, we conclude that, upon the facts as developed by plaintiff at trial, the *respondeat superior* doctrine was inapplicable to this case. Accordingly, the trial court correctly applied Civ.R. 50(A) in directing a verdict for the church.

The fifth assignment of error is overruled.

Plaintiff's first, second, third and fourth assignments of error are sustained. His fifth assignment of error is overruled. The judgment of the trial court is reversed in part and affirmed in part, and this cause is remanded to the that court for further proceedings consistent herewith.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

McCORMAC and PETREE, JJ., concur.

WILLIAM J. MARTIN, J., of the Carroll County Common Pleas Court, sitting by assignment.