LAWSON, Appellant,

v.

AK STEEL CORPORATION, Appellee.

[Cite as *Lawson v. AK Steel Corp.* (1997), 121 Ohio App.3d 251.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA96–10–222.

Decided June 9, 1997.

252

*Tobias, Kraus & Torchia* and *David Torchia,* for appellant.

*Taft, Stettinius & Hollister, Roger A. Weber* and *Gregory Parker Rogers,* for appellee.

_____

WALSH, Judge.

Plaintiff-appellant, Gregory Lawson, appeals two decisions by the Butler County Court of Common Pleas sustaining appellee's motion for summary judgment and Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. We affirm the summary judgment and reverse and remand the dismissal for failure to state a claim.

Appellant has worked for defendant-appellee, AK Steel Corporation, since 1973. In late 1993, appellant was working as a section manager in the machine shop, when he was asked to take a "special assignment" in appellee's purchasing department. Appellant claims that he was orally promised that when the special assignment ended, he would return to his position as a section manager. While working both positions, appellant was employed as an at-will employee.

Appellant's special assignment was to audit the energy department of appellee and to investigate the pump vendors dealing with the department. While working on the assignment, appellant claims, he became aware of several vendor practices that appeared to be corrupt, including appellee being overcharged "hundreds of thousands of dollars." Appellant claims that the vendor's actions could constitute theft and fraud, which would involve felony violations. See R.C. 2913.02. Appellant claims that he informed management of the vendors' corrupt practices.

On or about November 17, 1994, Bill Harner, appellant's supervisor, told appellant about a conversation Harner had with Bud Rossi, the plant vice president. Appellant claims that Rossi accused appellant of "taking kickbacks" and that Rossi also believed that appellant had accused two employees of "taking kickbacks." Appellant also claims that Rossi told Harner to fire appellant.

When the special assignment ended, appellant was told in December 1994 that his previous position of section manager had already been filled. Appellant claims that he was given the choice of an hourly position or being fired. Appellant accepted a position as an hourly machinist. Appellant claims that this is a lower position than his previous position as section manager. Appellant also claims that the demotion damaged his reputation by sending "a message that my performance was not good." Appellant asserts that the demotion occurred because he informed management about the corrupt practices of the vendors.

Appellant filed a complaint against appellee on December 18, 1995, requesting "recovery under the doctrine of promissory estoppel; wrongful demotion in violation of the public policy of Ohio; and defamation." Appellee moved for a

dismissal of the wrongful demotion claim pursuant to Civ.R. 12(B)(6) on January 19, 1996. The trial court granted the motion, finding that appellant had no cause of action because he did not allege compliance with the requirements of R.C. 4113.51, which provides the exclusive remedy for a "whistleblower" asserting a retaliation claim against an employer.

Appellee filed a motion for summary judgment on the promissory estoppel and defamation claims on June 20, 1996. The trial court granted summary judgment in favor of appellee on October 3, 1996. The trial court held that appellant could not support his promissory estoppel claim because he presented no evidence of a specific promise of continued employment. The trial court also held that a demotion in and of itself does not carry a defamatory inference to support a cause for defamation. On appeal, appellant presents three assignments of error.

Assignment of Error No. 1:

"The trial court erred by granting appellee's motion to dismiss appellant's public policy claim[.]"

■ Appellant argues that he stated a cause of action against appellee based upon the common-law remedies found in *Greeley v. Miami Valley Maintenance Contractors, Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981. Appellant claims that the Ohio Whistleblower Act (R.C. 4113.52) is not the exclusive remedy for employees complaining of improper conduct by their employer. A Civ.R. 12(B)(6) motion for an involuntary dismissal of a plaintiff's case can be granted if a plaintiff fails "to state a claim upon which relief can be granted." Civ.R. 12(B)(6). The only question we address is whether the dismissal of appellant's public policy claim should be reversed. We will not address the issue of whether appellant has presented sufficient evidence to sustain a claim based upon *Greeley*.

■ The employment-at-will doctrine is that the "employment relationship between employer and employee is terminable at the will of either; thus, an employee is subject to discharge by an employer at any time, even without cause." *Wright v. Honda of Am. Mfg., Inc.* (1995), 73 Ohio St.3d 571, 574, 653 N.E.2d 381, 383. The Ohio Supreme Court held in *Greeley* that "public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Id.*, 49 Ohio St.3d at 234, 551 N.E.2d at 986. The wrongfully discharged or disciplined employee may bring a cause of action against the employer if the employee shows that the dismissal would violate public policy. *Id.* at 235, 551 N.E.2d at 987–988. This exception to the employment-at-will doctrine has been called the tort of wrongful discharge/discipline in violation of public policy. *Id.*

■ The elements of the tort of wrongful discharge/discipline in violation of public policy are (1) that a clear public policy existed and was manifested in a

state or federal constitution, statute or administrative regulation, or in the common law, (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy, (3) the plaintiff's dismissal was motivated by conduct related to the public policy, and (4) the employer lacked overriding legitimate business justification for the dismissal. *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 70–71, 652 N.E.2d 653, 657–659.

The Supreme Court of Ohio recently held that a common-law cause of action based upon the tort of wrongful discharge/discipline violation of public policy is available to "whistleblowers." *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308, paragraph three of the syllabus. The court held that there is a clear public policy favoring whistleblowing which is evidenced by R.C. 4113.52. *Id.* at 153, 677 N.E.2d at 322–323. The definition of a "whistleblower" includes an employee who informs his employer about possible felony violations. R.C. 4113.52(A)(1)(a).

In the present case, the trial court found that because appellant failed to allege compliance with the requirements of R.C. 4113.51, appellant's complaint failed to state a claim upon which relief could be granted, relying upon our decision in *Bear v. Geetronics, Inc.* (1992), 83 Ohio App.3d 163, 614 N.E.2d 803. However, the Ohio Supreme Court in *Kulch* specifically overruled our reasoning in *Bear* where we held that R.C. 4113.52 preempts any possible common-law remedies for retaliatory discharges based on whistleblowing. *Kulch,* 78 Ohio St.3d at 159, 677 N.E.2d at 326–327; *Bear* at 169, 614 N.E.2d at 807. The Ohio Supreme Court held that R.C. 4113.52 does not preempt a whistleblower from bringing a common-law tort action alleging wrongful discharge or discipline in violation of public policy pursuant to *Greeley.* *Kulch,* 78 Ohio St.3d at 162, 677 N.E.2d at 328–329.

Appellant's complaint alleges wrongful demotion in violation of the public policy of Ohio. The demotion or dismissal of a whistleblower is against the public policy of Ohio as evidenced by the intent of R.C. 4113.52. Therefore, based upon this change in the law, we hold that appellant's complaint states a claim upon which relief could be granted. Appellant's first assignment of error is sustained.

Assignment of Error No. 2:

"The trial court erred by granting summary judgment on appellant's estoppel claim[.]"

The promissory estoppel doctrine is defined as "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 104, 19 OBR 261, 265, 483

N.E.2d 150, 154. In an employment setting, "a promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the well-established doctrine of employment at will." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 110–111, 570 N.E.2d 1095, 1099.

■ In the present case, appellant asserts that appellee promised to return appellant to his former position. However, appellant was an at-will employee and never claims that he was promised continued employment. Accordingly, appellant has no cause of action based upon promissory estoppel because there was no promise of continued employment. Appellant's second assignment of error is overruled.

Assignment of Error No. 3:

"The trial court erred by granting summary judgment on appellant's defamation claim[.]"

Appellant's complaint asserted:

"Defendant's agents have published false and defamatory statements with actual malice regarding Plaintiff's alleged involvement in kickbacks and bribes, all of which caused damage to Plaintiff's reputation in his business and profession. Defendant has further damaged Plaintiff's reputation by demoting him under the circumstances described above."

■ The essential elements of the common-law action of defamation, which includes both libel and slander, are:

" '(a) a false and defamatory statement concerning another;

" '(b) an unprivileged publication to a third party;

" '(c) fault amounting at least to negligence on the part of the publisher; and

" '(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.' " *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 601, 611 N.E.2d 955, 962, quoting 3 Restatement of the Law 2d, Torts (1977) 155, Section 558.

■ The publication of defamatory matter is an essential element of liability for defamation. *Hecht v. Levin* (1993), 66 Ohio St.3d 458, 460, 613 N.E.2d 585, 587. "Slander refers to spoken defamatory words, while libel is generally defined as written or printed defamatory words." *Schlegel v. Dean* (Apr. 25, 1997), Lucas App. No. L–96–147, unreported, 1997 WL 221113. See, also, *A & B–Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283, 1289. An action for slander or libel shall be commenced within one year after the cause of action accrued. R.C. 2305.11(A).

Appellant originally asserted that the comments Rossi made to Harner were slanderous. However, appellant discontinued pursuing this claim because R.C. 2305.11(A) places a one-year limitation on actions involving slander. Appellant cannot state a cause of action based upon alleged defamatory remarks of Rossi to Harner because appellant filed his complaint on December 18, 1995, which is beyond the statute of limitations period.

Appellant alleges no other slanderous statements. Appellant bases his defamation claim solely on the claim that his demotion left an impression of wrongdoing. Essentially, appellant argues that his demotion should be considered defamatory.

The trial court relied upon *Paolucci v. Robinson Mem. Hosp.* (Mar. 10, 1995), Portage App. No. 94–P–0022, unreported, 1995 WL 236743, in granting appellee's motion for summary judgment. In the *Paolucci* case, a plaintiff alleged that she was defamed by being fired and then escorted from a hospital by two security guards. The court held:

"[T]his court is unaware of any case which has found such conduct, standing alone, to constitute defamation. To the contrary, to present a prima facie case of defamation, the appellant is required to show 'that [appellee] made a publication to a third person, that the third person understood the defamatory meaning of the publication, and the actionable nature of the words.' " *Id.* at 11–12, quoting *Baby Tenda of Greater Cincinnati, Inc. v. Taft Broadcasting Co.* (1989), 63 Ohio App.3d 550, 552, 579 N.E.2d 522, 522–523.

In the present case, appellant has not shown that appellee made an actionable publication to a third person. The act of demoting appellant, standing alone without any other supporting evidence of publication, is not sufficient evidence to show publication. To hold otherwise would be to place limitations on the employment-at-will doctrine by holding that an employer will be subject to a defamation claim simply for the act of demoting an employee. This is not sound reasoning, and we cannot uphold it. Appellant's third assignment of error is overruled.

Accordingly, we affirm the trial court's summary judgment against appellant's claims based upon promissory estoppel and defamation. We reverse the trial court's ruling that appellant failed to state a claim regarding wrongful demotion based upon public policy and remand the cause to the trial court to conduct the necessary proceedings concerning appellant's claim.

*Judgment accordingly.*

WILLIAM W. YOUNG, P.J., concurs.

KOEHLER, J., concurs in part and dissents in part.

KOEHLER, Judge, concurring in part and dissenting in part.

I would find that appellant's second assignment of error should be sustained.

Appellant was assigned a special task by his employer and was promised that he could return to his former position. Upon completing the special assignment, appellant was not discharged; he continued in employment in a different capacity. But for the promise made to him by his employer, the record discloses, appellant would not have accepted the special assignment.

Contrary to the majority's ruling, appellant did and does claim that he was promised not only continued employment, but a return to his former position. Nowhere does the record reveal that appellant was discharged or demoted for cause.

Accordingly, I concur in part and dissent in part.