OPINION
This timely appeal arises from two judgment entries of the Mahoning County Court of Common Pleas which adjudicated Appellants' complaint for breach of contract and defamation. For the following reasons, we must dismiss the appeal of the March 1, 2000, Judgment Entry because that entry is not a final appealable order pursuant to R.C. § 2505.02. Appellants' first four assignments of error dealt with the March 1, 2000, Judgment Entry. Based on the record here, however, we overrule Appellant's fifth assignment of error and affirm the February 29, 2000, Judgment Entry.
This case involves disputes which arose after the sale of parts of a diagnostic radiology medical practice in late December of 1990. The practice was owned by a number of corporations and partnerships, all of which were controlled by Dr. Lloyd E. Slusher ("Dr. Slusher") as principal shareholder or controlling partner. Dr. Slusher and his business entities will be referred to collectively as "Appellees." The purchasers were Dr. Albert M. Bleggi ("Dr. Bleggi"); a corporation controlled by him, namely, Radiology Imaging Consultants, Corp. ("RICC"); and Dr. Jon A. Molisky, who is not involved in this action. Dr. Bleggi and RICC will be collectively referred to as "Appellants."
Both Dr. Slusher and Dr. Bleggi are physicians who specialize in the field of diagnostic radiology.
In December of 1990 and early January, 1991, the parties entered into at least nineteen contracts and transactions, which included the partial sale of assets of Dr. Slusher's businesses, assignments of leases, service contracts for reading radiological results and noncompetition agreements.
One of the service contracts gave Appellants the exclusive right to read and interpret all ultrasound procedures performed by Appellee Medical Ultrasound, Inc. ("MUI"). MUI was one of the business entities being partially retained by Dr. Slusher. The ultrasound service agreement was effective between January 1, 1991, and December 31, 2000. Appellants were to receive 20% of any fees collected by MUI for ultrasound interpretative services. Appellees continued to own the imaging equipment, and agreed to maintain the equipment and to pay for the technical personnel needed to operate the equipment.
The ultrasound service agreement contained a covenant in which Appellants agreed:
 "not to compete or engage in interpretation or diagnosis of ultrasound for any other agency, entity or person within the term period of this agreement * * * or within forty-five (45) miles from downtown Youngstown and three (3) years from the date that this contract is terminated by election by one of the parties or one of the parties breaches this agreement."
(Aug. 16, 1999 Plaintiff's Exh. A, Item 13).
Some of the other agreements between the parties also contained noncompetition clauses, although the terms of the noncompetition clauses vary. One such clause appeared in a service agreement between Appellants and Computer Billing Services, Inc. ("CBSI"), a company controlled by Dr. Slusher. The parties agreed that Appellants would have the exclusive right to read computerized tomography ("CT") scans completed by scanning equipment owned by CBSI and performed at Appellants' Boardman and Austintown, Ohio, offices. The clause stated that Appellants, "will not compete at any other location within ten (10) miles or three (3) years from the termination of the contract by breach or election by [Appellants]." (Emphasis added.) One of the disputes that later arises between the parties is whether the word "or" in this covenant renders the covenant ambiguous and unenforceable.
On March 25, 1997, MUI and Dr. Slusher notified Appellants in writing that they were electing to terminate the ultrasound reading agreement and were enforcing the noncompetition covenant. (Dr. Ball Depo., Plaintiff's Exh. 6).
Also on March 25, 1997, MUI sent letters to approximately ten physicians which had previously used MUI's equipment and services. The letters stated: "[d]ue to past and on-going quality concerns, effective April 1, 1997, we will be utilizing Drs. Dean Ball and Adam Crouch for interpretation of ultrasound exams performed in your office." (Aug. 17, 1999 Motion for Summ.J., Dr. Slusher Affidavit 4).
On April 16, 1997, Appellants filed a complaint in Mahoning County Court of Common Pleas alleging breach of contract, promissory estoppel, detrimental reliance, defamation per se and defamation per quod, and asking for a declaratory judgment that the noncompetition covenants were no longer enforceable due to Appellees' breach of contract.
On July 7, 1997, Appellees filed an Answer and Counterclaim, which was later amended. Appellees prayed for injunctive and monetary relief as a result of the three counts in their counterclaim. Appellees' first count alleged that Appellants breached the noncompetition clause in the CT scan service agreement. Appellees alleged that Appellants either terminated or breached the contract, which triggered the noncompetition clause. Appellees alleged that Appellants continued to read CT scans at their Boardman and Austintown offices in violation of the noncompetition clause.
Appellees's second count alleged that Appellants breached the noncompetition clause of the ultrasound reading agreement. Appellees asserted that Appellants breached the agreement by performing, "substandard, suboptimal, negligent, careless and/or inaccurate," ultrasound readings. Appellees asserted that Appellants' breach triggered the noncompetition clause.
Appellees third count alleged that Appellants breached a billing contract whereby CBSI was given the exclusive right to provide billing services for Appellants.
On August 17, 1999, Appellees filed a partial Motion for Summary Judgment on the defamation claims, to which Appellants responded.
A September 24, 1999 Judgment Entry assigned to a magistrate the declaratory judgment issue and all other issues of law arising from the opposing claims.
On December 21, 1999, a magistrate's hearing was held on the declaratory judgment and legal issues.
On January 19, 2000, the magistrate filed his decision as to the defamation claims. The decision recommended granting summary judgment to Appellees on the defamation per se claim, and recommended denying summary judgment on the defamation per quod claim.
On January 20, 2000, the magistrate filed his decision as to the declaratory judgment questions and the other issues of law. The magistrate found that there was no unified global agreement between the parties and that the contracts entered into by the parties were separate and independent contracts. He found that Appellees were permitted to terminate the ultrasound reading agreement pursuant to the terms of the contract, and that its termination had no effect on the validity of the other contracts entered into by the parties. He found that the covenant not to compete contained in the ultrasound reading agreement was reasonable, not ambiguous, and enforceable. He also found that the covenant not to compete in the CT scan reading agreement was ambiguous and that Appellants did not breach it.
Both parties filed objections to both of the magistrate's decisions. Appellees objected to the denial of summary judgment on the defamation per quod claim, and to the finding that the covenant not to compete contained in the CT scan agreement was not enforceable. Appellants objected to the granting of summary judgment on the defamation per se claim. Appellants also objected to these three findings of the magistrate: 1) that there was no integrated global agreement between the parties; 2) that Appellees were permitted to unilaterally terminate the ultrasound reading agreement; and 3) that the noncompetition covenant in the ultrasound reading agreement was reasonable and enforceable.
On February 29, 2001, the trial court ruled on the objections to the defamation issues. The trial court adopted the magistrate's recommendation that Appellees be granted summary judgment on the defamation per se claim. The trial court rejected the magistrate's recommendation on the defamation per quod claim, concluding that Appellees successfully raised the defense of qualified privilege and that Appellants did not provide any evidence in rebuttal. The trial court granted summary judgment to Appellees on the defamation per quod claim as well.
On March 1, 2000, the trial court ruled on the objections to the magistrate's decision relating to the noncompetition covenants. The trial court partially sustained Appellees' objection to the conclusion that the noncompetition covenant in the CT scan agreement was unenforceable. The court found that the covenant was ambiguous on its face, but that additional parol evidence resolved the ambiguity. The trial court determined that the "or" should be read as "and," thus resolving the ambiguity. The court nevertheless concluded that there was no evidence in the record that Appellants breached the noncompetition covenant.
The trial court overruled Appellants' objections and adopted the remaining conclusions and findings in the January 20, 2000, Magistrate's Decision.
On March 29, 2000, Appellants filed a notice of appeal, which was designated as Mahoning App. No. 00 CA 65. Appellees filed a motion to dismiss the appeal for lack of a final appealable order. While the motion to dismiss was pending, the trial court, on April 18, 2000, filed twonunc pro tunc entries which amended the judgment entries being appealed to include the words: "there is no just reason for delay." The nunc protunc entries were stated to be effective February 29, 2000, and March 1, 2000, respectively. On April 20, 2000, Appellants filed a new appeal of the two nunc pro tunc entries. This was designated as Mahoning App. No. 00 CA 79. On May 4, 2000, Appellees filed a motion to dismiss this new appeal, again for the reason that it was not a final appealable order.
On June 28, 2000, we dismissed Mahoning App. No. 00 CA 65 for lack of a final appealable order. On November 21, 2000, we overruled, without explanation, Appellees' second motion to dismiss. Appellees' brief on appeal continues to maintain that this appeal should be dismissed because there is no final appealable order as required by R.C. § 2505.02. On October 19, 2001, Appellees filed yet another motion to dismiss on jurisdictional grounds.
We must begin with a review of Appellees' argument that the requirements of R.C. § 2505.02 have not been met. For the following reasons, we partially sustain Appellees' motion to dismiss.
The Ohio Constitution limits the appellate jurisdiction of the courts of appeal to reviewing only judgments and final orders. Section 2, Article IV, Ohio Constitution. R.C. § 2505.02 defines a "final order" as:
 "(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
"(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
"(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
"(3) An order that vacates or sets aside a judgment or grants a new trial;
"(4) An order that grants or denies a provisional remedy and to which both of the following apply:
"(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
"(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.
"(5) An order that determines that an action may or may not be maintained as a class action."
Appellees first argue that the trial court had no jurisdiction to issue the April 18, 2000, nunc pro tunc entries because the case was already on appeal and under the exclusive jurisdiction of the court of appeals. Appellees contend that a trial court does not retain jurisdiction to reconsider its orders when an appeal from those same orders is pending, citing
Howard v. Catholic Social Serv. of Cuyahoga Cty., Inc. (1994),70 Ohio St.3d 141, 147, in support.
Although Appellees cite a correct principle of law, the holding inHoward is not at issue in the case at bar. Howard held that the trial court was without jurisdiction to consider a Civ.R. 60(B) motion for relief from judgment. The April 18, 2000, judgment entries were nunc protunc entries to correct a clerical oversight on the part of the trial court, which falls under Civ.R. 60(A):
 "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court
at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court." (Emphasis added.)"
If there is any ambiguity as to whether the trial court had leave to file the nunc pro tunc entries, we will clarify it now by saying that such leave is granted. Generally, though, one or more parties should request leave of this Court to allow the filing of a nunc pro tunc entry by the trial court.
The instant appeal involves two distinct judgment entries of the Mahoning County Court of Common Pleas, both issued on April 18, 2000. Appellants' single notice of appeal in effect initiated appeals of two judgment entries. The first appeal involves the granting of summary judgment on the two defamation counts of Appellants' five count complaint. The second appeal involves a challenge to a series of factual findings and legal conclusions arising out of count five of Appellants' complaint. Because the judgment entries do not purport to resolve all disputed issues between the parties as raised in the complaint and counterclaims, we must determine whether there is a final appealable order over which we have jurisdiction. The trial court did certify the judgment entries as final appealable orders, pursuant to Civ.R. 54(B), but that is not the only relevant factor in our analysis. The two distinct judgment entries raise somewhat different issues to be decided as to whether each is a final appealable order.
An order of a court is final and appealable only if it meets the requirements of both Civ.R. 54(B) and R.C. § 2505.02.
Denham v. New Carlisle (1999), 86 Ohio St.3d 594, 596. "`[T]he entire concept of `final orders' is based upon the rationale that the court making an order which is not final is thereby retaining jurisdiction for further proceedings. A final order, therefore, is one disposing of the whole case or some separate and distinct branch thereof." Noble v.Colwell (1989), 44 Ohio St.3d 92, 94, quoting Lantsberry v. Tilley LampCo. (1971), 27 Ohio St.2d 303, 306.
Civ.R. 54(B) states, in pertinent part:
 When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.
The general purpose of Civ.R. 54(B) is to, "accommodate the strong policy against piecemeal litigation with the possible injustice of delayed appeals in special situations." Noble v. Colwell, supra, at 96, citingAlexander v. Buckeye Pipe Line Co. (1977), 49 Ohio St.2d 158, 160.
The trial court certified both judgment entries to be final appealable orders when it added the words, "there is no just reason for delay," as required by Civ.R. 54(B). For the purposes of Civ.R. 54(B) certification, the trial court makes a factual determination of whether or not an interlocutory appeal is consistent with the interests of sound judicial administration. Wisintainer v. Elcen Power Strut Co. (1993),67 Ohio St.3d 352, paragraph one of syllabus. "In making its factual determination that the interest of sound judicial administration is best served by allowing an immediate appeal, the trial court is entitled to the same presumption of correctness that it is accorded regarding other factual findings. An appellate court should not substitute its judgment for that of the trial court where some competent and credible evidence supports the trial court's factual findings." Id. at 355.
While this is a very deferential standard, and appellate courts have been reluctant to strike such a certification, the trial court's use of the "magic language" of Civ.R. 54(B) does not, by itself, convert a final order into a final appealable order. The phrase "no just reason for delay" is not a mystical incantation that transforms a non-final order into a final appealable order. Chef Italiano Corp. v. Kent State Univ. (1989), 44 Ohio St.3d 86. See Bell Drilling Producing Co. v. KilbargerConst., Inc. (June 26, 1997), Stark App. No. 96CA23, unreported; Ralstonv. Scalia (Jan. 10, 1994), Stark App. No. CA-9344, unreported (appeals dismissed for lack of final appealable order notwithstanding the presence of no just reason for delay language).
The appeal of the first judgment entry, dealing with the defamation issues, is final and appealable pursuant to R.C. § 2505.02(B)(1). The judgment entry completely resolves and disposes of the defamation action and, by the trial court's inclusion of the, "no just reason for delay" language of Civ.R. 54(B), prevents any further judgment on the defamation issues. An adjudicated claim is separable from others remaining to be adjudicated when the nature of the claim already determined is, "such that no appellate court would have to decide the same issues more than once even if there are subsequent appeals." Curtiss-Wright Corp. v.General Elec. Co. (1980), 446 U.S. 1, 9. The record supports the trial court's certification that there are no remaining issues pending in the defamation action and the April 18, 2000, Judgment Entry thus presents a final appealable order.
The appeal of the second judgment entry, dealing with contract issues, does not qualify as a final order under either R.C. § 2505.02 or Civ.R. 54(B). The order does not vacate or set aside a judgment, grant a new trial, grant or deny a provisional remedy, or deal with a class action, and thus R.C. § 2505.02(B)(3)-(5) do not apply. R.C. §2505.02(B)(2) does not apply because the order is not made in a special proceeding. It is true that a declaratory judgment action, by itself, is a special proceeding under R.C. § 2505.02. See General Acc. Ins. Co. v.Insurance Co. of North America (1989), 44 Ohio St.3d 17, 22 (dealing with a former version of R.C. § 2505.02). Nevertheless, "[p]iecemeal adjudication does not become appealable merely because cast in the form of a declaratory judgment." Curlott v. Campbell (C.A.9, 1979),598 F.2d 1175, 1180, citing Liberty Mutual Insurance Co. v. Wetzel
(1976), 424 U.S. 737, 742-744. The declaratory judgment claim was asserted within the context of an ordinary civil action for breach of contract, and it is the underlying action which governs our analysis.Stevens v. Ackman (2001), 91 Ohio St.3d 182, 188.
Finally, the judgment does not qualify as a final appealable order under R.C. § 2505.02(B)(1) because it does not completely resolve Appellants' contract disputes. The judgment entry only purported to resolve the issues raised in count five of Appellants' complaint, as well as some purely legal issues touching upon the enforceability of the noncompetition covenants. Although the trial court's legal conclusion may effectively resolve the broader contract dispute, the trial court did not clearly render a judgment on the remaining contract claims.
Even assuming arguendo that the March 1, 2000, Judgment Entry would qualify as a final order under R.C. § 2505.02(B)(1), it does not qualify as final and appealable under Civ.R. 54(B). A partial final order is not appealable pursuant to Civ.R. 54(B) if there are pending unresolved counterclaims touching upon the same facts, legal issues and circumstances as the original claim. Noble v. Colwell, supra, at 96, 98.
We therefore conclude that the February 29, 2000, Judgment Entry is a final appealable order, taking into account the April 18, 2000, nunc protunc corrective entry. We dismiss the appeal filed as to the March 1, 2000, Judgment Entry for lack of a final appealable order.
As Appellants' first four assignments of error on appeal deal with issues arising from the March 1, 2000, Judgment Entry, these assignments of error are dismissed in conjunction with the dismissal of that appeal.
Appellants' fifth and sole remaining assignment of error relates to the February 29, 2000, Judgment Entry. We now turn our attention to the merits of this assignment of error, which states:
 "THE TRIAL COURT ERRED IN SUSTAINING APPELLEES' MOTION FOR SUMMARY JUDGMENT ON THE DEFAMATION CLAIMS."
Summary judgment is appropriate in defamation actions because the determination of whether words are defamatory is a question of law to be decided by the court. Vail v. The Plain Dealer Publishing Co. (1995),72 Ohio St.3d 279, 280. To survive a motion for summary judgment in a defamation action, the plaintiff must make a sufficient showing of the existence of every element essential to his or her case. See CelotexCorp. v. Catrett (1986), 477 U.S. 317.
An appellate court conducts a de novo review of a trial court's grant of summary judgment. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial."Brewer v. Cleveland Bd. Of Edn. (1997), 122 Ohio App.3d 378, 383, citingDupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 119-120. In other words, we review the trial court's decision without according it any deference. Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704,711.
Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
The burden is on the movant to show that no genuine issue of material fact exists. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Id. Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment, if appropriate, will be granted to the movant. Id.
Because this appeal also involved the trial court's review of a magistrate's decision, the rules pertaining to magistrate's decisions apply. Pursuant to Civ.R. 53(E)(3)(b), a party, "shall not assign as error on appeal the [trial] court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Civ.R. 53(E) imposes an affirmative duty on the parties to make timely, specific objections in writing to the trial court, identifying any error of fact or law in the magistrate's decision. Alleged errors in the trial court's adoption of a magistrate's findings of fact or conclusions of law are waived on appeal absent timely objections to the magistrate's decision. Huffman v. Huffman (June 21, 2000), Mahoning App. No. 98 CA 136, unreported, *3; see, also, Waltimirev. Waltimire (1989), 55 Ohio App.3d 275. It appears that the alleged errors raised in this appeal were either previously raised in timely objections or involve changes to, rather than the adoption of, the magistrate's decision.
Appellants' brief in opposition to the motion for summary judgment makes the following arguments to defeat the motion: 1) there are material facts in dispute as to whether Dr. Slusher's statement is a false statement of fact; and 2) the qualified privilege defense does not apply because Appellees had an ulterior motive or actual malice in discrediting the quality of Appellants' work.
Defamation is a false publication that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace or affects the person adversely in his trade or business.Matalka v. Lagemann (1985), 21 Ohio App.3d 134, 136. Defamation can be in the form of either slander or libel. Slander generally refers to spoken defamatory words, while libel refers to written or printed defamatory words. Lawson v. AK Steel Corp. (1997), 121 Ohio App.3d 251,256; see, also, A B-Abell Elevator Co., Inc. v. Columbus/Central OhioBldg. Contr. Trades Council (1995), 73 Ohio St.3d 1, 7.
The essential elements of a defamation action, whether slander or libel, are that the defendant made a false statement, that the false statement was defamatory, that the false defamatory statement was published, that the plaintiff was injured and that the defendant acted with the required degree of fault. Celebrezze v. Dayton Newspapers, Inc. (1988), 41 Ohio App.3d 343, 346-347. In an action for defamation, the plaintiff's prima facie case is made out when he has established a publication to a third person for which defendant is responsible, the recipient's understanding of the defamatory meaning, and its actionable character. Hahn v. Kotten (1975), 43 Ohio St.2d 237, 243.
Defamation is further categorized as defamation per se and defamation per quod. Defamation per se occurs when material is defamatory on its face, i.e., by the very meaning of the words used; defamation per quod occurs when material is defamatory through interpretation or innuendo.Moore v. P. W. Pub. Co. (1965), 3 Ohio St.2d 183, 188; Becker v. Toulmin
(1956), 165 Ohio St. 549, 556. Written matter is libelous per se if, on its face, it reflects upon a person's character in a manner that will cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession. Id. at 553. When a writing is not ambiguous, the question of whether it is libelous per se is for the court to decide. Id. at 555.
Under Ohio law, for a statement to be defamatory it must be a statement of fact and not of opinion. Vail, supra, 72 Ohio St.3d at 281. Section11, Article I of the Ohio Constitution provides in relevant part: "[e]very citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press."
Whether allegedly defamatory language is opinion or fact is a question of law for the court to decide. Yeager v. Local Union 20 (1983),6 Ohio St.3d 369, 372. A "totality of the circumstances" test is used to determine whether a statement is fact or opinion. Vail at 281. This is a fluid test and calls for the court to consider the specific language used, whether the statement is verifiable, the general context of the statement and the broader context in which the statement appeared. Id.
The allegedly defamatory statement made by Appellees does not, on its face, make any reference to Appellants. Therefore, the statement cannot be libel per se.
The allegedly defamatory words used by Appellees are highly subjective, vague, and do not reference any specific fact. The statement also is not verifiable. Even if it is true that Appellants' ultrasound readings conformed to reasonable medical standards, that says nothing as to what Dr. Slusher's quality standards were. For a person to say that they are concerned about the quality of someone's work is analogous to saying that person does not like the work. An expression of one's likes and dislikes fall squarely within the realm of protected opinion.
The fact that Appellees' statement appears in the context of a business communication does not aid our analysis. The statement was made as a partial explanation to Appellees' clients as to why two new doctors were going to be doing the ultrasound readings. An explanation to a client about a change in business practices is not inherently subjective opinion or objective fact, unlike, for example, an opinion column about the latest movie craze or an engineering report on the tensile strength of a new alloy.
Based on the totality of the circumstances, Appellees' use of the phrase, "due to past and ongoing quality concerns," is nondefamatory opinion as a matter of law.
Even assuming arguendo that Appellees' statement was defamatory, Appellants' have not pointed to any material fact in dispute relating to Appellees' defense of qualified privilege.
 "A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest."
 Hahn, supra, 43 Ohio St.2d at 244. A qualified privilege attaches where the publication is made in a reasonable manner and for a proper purpose.Id. Implicit in this defense is a right and a duty to speak on matters of concern to a particular interested audience and good faith in the publication. Id.
In the Hahn case, the Ohio Supreme Court held that such a privilege attached to a letter from an insurance company to some of its policyholders informing them of the reasons why it was terminating agent Hahn. This privilege was cited with approval in Jacobs v. Frank, which held that the privilege protected a letter written by a physician to an out-of-state medical licensing board about the fitness of another physician to practice medicine. (1991), 60 Ohio St.3d 111, 114. The circumstances of Hahn and Jacobs are very similar to those of the casesub judice.
"The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." Jacobs at 114.
The type of qualified privilege described in Hahn and Jacobs can be defeated, "only by a clear and convincing showing that the communication was made with actual malice. In a qualified privilege case, `actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." Jacobs
at paragraph two of syllabus.
Once a defendant raises the qualified privilege defense, including an assertion that its statements were made in good faith, the plaintiff has the burden of showing, beyond the allegations in the complaint, that the defendant acted with actual malice. Evely v. Carlon Co. (1983),4 Ohio St.3d 163, 166. See, also, Varanese v. Gall (1988),35 Ohio St.3d 78. Furthermore, the focus of this determination is not on the defendant's attitude toward the plaintiff, "but rather on the defendant's attitude toward the truth or falsity of the statement alleged to be defamatory." Id. at 80.
Appellants' evidence in opposition to the motion for summary judgment does not meet the burden of showing that there is a dispute as to whether Appellees acted without good faith and with actual malice.
Appellants' evidence consisted of an affidavit of Dr. Bleggi and a deposition, with supporting documents, of Dr. Dean R. Ball ("Dr. Ball"). Dr. Ball testified that he entered into a contract in 1996 to purchase two radiology businesses from Dr. Slusher. (Dr. Ball Depo. 8-9). The preliminary negotiations for the purchase agreement indicated that Dr. Ball might be taking over some or all of the ultrasound reading now being done by Appellants under the exclusive reading contract with MUI. (Dr. Ball Depo. 11). Dr. Ball testified:
 "Q. [Appellants' attorney:] And I asked earlier, but do you have any recollection of discussions with Dr. Slusher that he had a covenant not to compete with Dr. Bleggi within a certain geographical area?
"A. [Dr. Ball:] Not that I remember.
 "Q. Did you have any discussions with Dr. Slusher about your taking over the Regional Imaging Consultants Corp.'s reading of Medical Ultrasound's?
 "A. Yes, he conveyed to me that, I guess, he was having problems with other physicians' complaints, nothing that I can remember specifically about the ultrasound part of the business, and that probably went on for about a month.
 He initially said, `You know, I'm going to have to make a change. Somebody else has to be reading these ultrasounds.'"
(Dr. Ball Depo. 18-19).
There is nothing in Dr. Ball's testimony which raises an issue of bad faith on Appellees' part. Dr. Ball's testimony is completely consistent with Appellees' evidence that the alleged defamatory statement arose out of Dr. Slusher's concern for the patients and doctors who would rely on the ultrasound reports. (8/17/99 Motion for Summ.J., Dr. Slusher Affidavit 3-4). Dr. Bleggi's affidavit likewise does not raise any issues of material fact pertaining to the defense of qualified privilege. His mere statement that Appellees did not act in good faith is not evidence, but rather, an unsupported opinion.
Appellants were required to provide some evidence, as permitted by Civ.R. 56, that the alleged defamatory statement was false or that Appellees recklessly disregarded its truth or falsity. Because the burden had shifted to Appellants to provide some evidence of actual malice and they did not, Appellees' defense of qualified privilege warrants summary judgment in their favor on the defamation claims.
For the following reasons, Appellants' fifth assignment of error lacks merit and is overruled. We hereby affirm the February 29, 2000, Judgment Entry in full. We dismiss all remaining aspects of this appeal due to the lack of a final appealable order with respect to the March 1, 2000, Judgment Entry.
Vukovich, P.J., concurs.
DeGenaro, J., concurs.