JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Leo R. Ward, appeals the jury verdict of the Cuyahoga County Court of Common Pleas, Civil Division, which was in favor of the appellee, Victor M. Javitch, Receiver for Capital Funding Leasing, Viatical Escrow Services, and several other companies that were controlled by James Capwill.
 {¶ 2} The instant matter stems from two loans which were never repaid. Ward represented several businesses owned by Michael Stevens. During the course of representation, Stevens' companies became involved in a complex commercial arbitration lawsuit against Sprint Telecommunications Company. Because of the complex nature of the arbitration proceedings, the expense in preparing for arbitration was expected to exceed $425,000. In an effort to finance the litigation, Ward and Stevens sought the financial assistance of James Capwill and his companies, Capital Funding Leasing (CFL) and EJT Management (EJT).
 {¶ 3} To secure financing for the Sprint arbitration, Ward personally signed two promissory notes. The first note, dated January 19, 1999, in the amount of $31,390.91, was payable to CFL. The second note, dated January 27, 1999, in the amount of $103,533.91, was payable to EJT. After loan fees and commissions were deducted, the sums of $30,000 and $100,000 were wire transferred to Ward's IOLTA account, as outlined in the promissory notes. Importantly, the promissory notes were cognovit notes which were utilized not only to finance the Sprint arbitration, but to pay Ward's hourly fees and expenses associated with said arbitration.
 {¶ 4} Interestingly, the two promissory notes, signed by Ward, were purportedly "canceled" through a series of transactions. First, Stevens' companies signed a new lending agreement with CFL in the amount of $450,000, which contained a "conditional promise" to repay the money in the event that the Sprint arbitration was a success. Thereafter, deposition testimony revealed that Ward's obligation was supposedly "repaid" utilizing a portion of the $450,000 secured by Stevens' companies.
 {¶ 5} Javitch, as receiver, argued that the curious series of transactions were void as a fraudulent transfer.[1],[2]
Specifically, Javitch urged that since CFL was insolvent at the time of the transaction with Stevens' companies, the transaction between the parties was voidable. Because the transaction was made for inadequate consideration, i.e., a conditional promise to pay, CFL could not have cancelled Ward's obligations for this highly-speculative promise of Stevens and his companies to pay in the event that the arbitration was successful. In addition, David Tantlinger, the receivership accountant, testified that Capwill commingled funds, both personal and business, which in effect extinguished any type of autonomy between the companies. In doing so, Capwill breached his fiduciary duties to the companies he represented. As a result of these actions, the U.S. District Court for the Northern District of Ohio placed Capwill's companies into receivership.
 {¶ 6} At the close of evidence, the jury returned a verdict in favor of Javitch finding that the promissory notes made payable to Ward, and which Ward had guaranteed, had not been repaid and were presently due and owing. It is from this verdict that Ward, now appeals.
 {¶ 7} For the following reasons, the appellant's appeal is not well taken.
 {¶ 8} The appellant presents seven assignments of error for this court's review. His first assignment of error states:
 {¶ 9} "I. The jury verdict is against the manifest weight of the evidence because the uncontroverted testimony at trial was that Ward's obligation under the first and second promissory notes were discharged."
 {¶ 10} The appellant argues here that the jury verdict is against the manifest weight of the evidence because the evidence at trial reflected that CFL had executed a release that discharged the appellant's obligation under the two promissory notes. For the following reasons, we find no merit to this argument.
 {¶ 11} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, at syllabus. The trial court is in the best position to weigh the credibility of the proffered testimony, thus an appellate court is guided by the presumption that the findings of the trier of fact were correct.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80.
 {¶ 12} The appellant's position at trial was that CFL had executed a release which effectively discharged his obligation under the two promissory notes. Notably, the appellant does not take into account the evidence introduced at trial which clearly demonstrates the fact that the purported release was fraudulent. Specifically, R.C. 1336.05 and R.C.1336.07 authorize a creditor to avoid a fraudulent transfer to the extent necessary to satisfy the claims of the creditor. Under R.C. 1336.05, fraudulent transfers are defined as follows:
 {¶ 13} "A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transaction."
 {¶ 14} As accurately outlined in appellee's brief, in order to avoid the purported release or novation, the appellee needed to prove the following elements: 1) the creditor status as to appellant, Ward; 2) a transfer by CFL 3) without receiving a reasonably equivalent value in exchange; and 4) the transfer being made while CFL was insolvent. In reviewing each element, it is abundantly clear that the evidence at trial satisfied all of the necessary elements.
 {¶ 15} As receiver, the duties of Javitch were to enforce the claims of CFL and Viatical Escrow Services. In establishing the creditor status, it is clear that CFL was a creditor of the appellant with respect to the first promissory note. Specifically, the note was made between CFL and the appellant. This fact is not in dispute. With respect to the second promissory note between the appellant and EJT, Javitch testified that $100,000 was transferred from CFL, not EJT, to the appellant's IOLTA account on the day that the second promissory note was signed. No transfer was made by EJT to the appellant; rather the money was transferred from CFL. Further, receivership accountant, Tantlinger, testified that Capwill had commingled the funds of CFL, EJT and Viatical Escrow Services to the extent that it was difficult to decipher which monies were attributable to which account. The "accounting practices" of Capwill are the very basis for the various companies being put into receivership. Therefore, in light of the above, it is abundantly clear that "creditor status" had been satisfied.
 {¶ 16} Turning to the "transfer" element, the evidence reflects that the alleged release of the appellant's note was a "transfer" for the purposes of the fraudulent transfer statute. Under R.C. 1336.01(L), "transfer" is defined as follows: "* * * every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposingof or parting with an asset or an interest in an asset, and includespayment of money, release, and creation of a lien or other encumbrance." Clearly, Capwill's attempt to cancel/release the appellant's obligation was a "transfer" within the statutory definition.
 {¶ 17} To satisfy the third element, it must be proven that the release was obtained without receiving a reasonably equivalent value in exchange. The evidence is uncontroverted that the appellant's promise to pay was unconditional, while the loan "allegedly" obtained by Stevens' companies was conditioned on the outcome of the Sprint arbitration. Common sense would lead any reasonable individual to conclude that a release premised in this situation was clearly not a reasonably equivalent value in exchange; a point clearly understood by the jury in light of its verdict.
 {¶ 18} Last, Capwill's companies were insolvent at the time of transfer. As noted by the appellee, the purpose of the fraudulent transfer statute is to prevent an insolvent entity from defrauding its creditors by disposing of assets for less than their fair market value. The testimony of Tantlinger and Javitch indicated that CPL was insolvent at the time of the alleged release or novation, as highlighted extensively in the receivership records.
 {¶ 19} Therefore, in light of the abundant evidence, it is clear that the verdict of the jury was not against the manifest weight of the evidence. The record is replete with extensive testimony and physical evidence which indicates the existence of a binding obligation on the part of the appellant. As such, the appellant's first assignment of error is without merit.
 {¶ 20} The appellant's second, third, and fourth assignments of error have a common basis in both in law and fact, and will therefore be addressed together. They state:
 {¶ 21} "II. The trial court committed reversible error by denying Ward's motion for directed verdict because appellee failed to either submit the original promissory notes as evidence or to account for their absence."
 {¶ 22} "III. The trial court committed reversible error by denying Ward's motion for directed verdict on the claim on the January 27, 1999 promissory note between EJT and Ward because appellee was not appointed the receiver of EJT and, therefore, appellee lacked standing to sue on that note."
 {¶ 23} "IV. The trial court committed reversible error by denying Ward's motion for directed verdict and allowing testimony, evidence, and jury instructions relating to appellee's claim for fraudulent conveyance because appellee failed to assert the elements for such cause of action in its complaint."
 {¶ 24} A motion for directed verdict is to be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party. Civ.R. 50(A)(4); Crawford v. Halkovics (1982), 1 Ohio St.3d 184. A directed verdict is appropriate where the party opposing it has failed to adduce any evidence on the essential elements of this claim. Cooper v. GraceBaptist Church (1992), 81 Ohio App.3d 728, 734. The issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury, and it constitutes a question of law, not one of fact. Hargrove v. Tanner (1990), 66 Ohio App.3d 693,695; Vosgerichian v. Mancini Shah Associates, et al. (Feb. 29, 1996), Cuyahoga App. Nos. 68931 and 68943. Accordingly, the courts are testing the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 68-69. Since a directed verdict presents a question of law, an appellate court conducts a de novo review of the lower's court judgment. Howell v. Dayton Power and Light Co. (1995), 102 Ohio App.3d 6,13; Keeton v. Telemedia Co. of S. Ohio (1994), 98 Ohio App.3d 1405,1409.
 {¶ 25} First, in addressing the second assignment of error, the appellant contends that the lower court erred in not granting his motion for directed verdict because the appellee failed to submit the original promissory notes.[3] The appellant points to R.C. 1303.38 in support of his position. R.C. 1303.38 states a person in possession of an instrument cannot enforce the instrument unless all of the following apply: 1) The person in possession of the instrument was entitled to enforce it when loss of possession occurred; 2) the loss of possession was not the result of a transfer by the person or of lawful seizure; and 3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.
 {¶ 26} The appellant's reliance on R.C. 1303.38 is without merit for the following reasons. First, the instant matter does not revolve around the existence of alleged "promissory notes." Rather, the instant matter deals directly with the appellee's right to recover an original debt. The evidence clearly reflects that the appellant admitted signing two promissory notes, which he was obligated to repay at the time he signed. At no point does the appellant contest the validity of the promissory notes. Moreover, the appellant acknowledges that he executed said notes and received money in accordance. Thus, the existence of said notes has no bearing on the instant matter or the terms underlying the debt since the appellant repeatedly admits to executing said notes.
 {¶ 27} Since this is not an action to replace a lost instrument, the governing rule is not R.C. 1303.38, but Evid.R. 1003, which provides:
 {¶ 28} "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."
 {¶ 29} A party seeking to exclude a "duplicate" from the evidence pursuant to Evid.R. 1003 has the burden of demonstrating that the duplicate should not be admitted. Under this rule, a determination as to whether such duplicate should be admitted is within the sound discretion of the trial court, and unless it is apparent from the record that the decision of the court is arbitrary or unreasonable, the determination will not be disturbed on appeal.
 {¶ 30} As stated, the appellant does not contest the promissory note, nor does he present any evidence demonstrating that the duplicate should not be admitted. On the contrary, the appellant admits repeatedly that the original promissory notes were validly executed. Further, there is no indication that it would be unfair to admit the duplicate in lieu of the original.
 {¶ 31} Moreover, there is no indication from the record that the appellant sought the original promissory notes, nor did he present this argument prior to the instant appeal. Specifically, the appellant raised this defense for the first time on directed verdict. Accordingly, this defense is waived for failure to assert it as an affirmative defense prior to trial.
 {¶ 32} Next, the appellant, in his third assignment of error, argues that the second promissory note was between himself and EJT, and since EJT was not under the receivership, the appellee lacked standing to recover on that note.
 {¶ 33} Granted, the second promissory note did indicate that the lender was EJT, but the testimony at trial clearly indicated that the source of funds for the loan was CFL. The U.S. District Court for the Northern District of Ohio appointed Javitch receiver of CFL and Viatical Escrow Services to recover assets of said companies. Through his duties as receiver, Javitch testified that Capwill mismanaged the funds of the companies by commingling the assets of CFL and EJT. Additionally, the lower court took judicial notice of the findings made by the federal court in the underlying receivership case that Capwill had commingled the funds. Last, and most damaging, the evidence clearly indicates that the source of funds in relation to the second promissory note originated with CFL. Therefore, it would be inequitable to endorse the appellant's argument that the appellee lacks standing when the evidence indicates the source of funds to be CFL.
 {¶ 34} Last, the appellant argues in his fourth assignment of error that the lower court erred in failing to grant his motion for directed verdict relating to the appellee's claim for fraudulent conveyance because the appellee's complaint failed to allege a cause of action for fraudulent conveyance. This argument is misguided and without merit.
 {¶ 35} During the course of litigation, the appellant centered his defense around the alleged "release" or "novation" which was purportedly executed by Capwill. In order to assert these affirmative defenses, the appellant bore the burden of proof. See Civ.R. 8(C); Tremco v. Kent (May 29, 1997), Cuyahoga App. No. 70920, citing MatchMaker Internatl., Inc.v. Long (1995), 100 Ohio App.3d 406, (holding that the defendant asserting an affirmative defense had the burden of proof to establish a defense). In order to counter this defense, the appellee argued that the purported release or novation was void as a fraudulent transfer.
 {¶ 36} There is no requirement under the Ohio Rules of Civil Procedure which obligates a plaintiff to anticipate the affirmative defenses of an opposing party in crafting a complaint, nor is there any rule which requires a party to amend its complaint to comport with the affirmative defenses later asserted by the defendant. Simply, the trial court is left to its discretion in charging the jury based on the evidence presented during the course of trial. Since the evidence at trial indicated a viable cause of action for fraudulent conveyance, it was clearly within the trial court's discretion in crafting said jury charge. Therefore, we can find no evidence to indicate that the lower court abused its discretion which would warrant reversal.
 {¶ 37} The appellant's fifth and sixth assignments of error have a common basis in both law and fact and will be addressed together. They state:
 {¶ 38} "V. The trial court committed reversible error by allowing the testimony of appellee's expert, David Tantlinger, C.P.A., because appellee failed to submit an expert report in direct contradiction to Rule 21.1 of the Cuyahoga County Court of Common Pleas Local Rule."
 {¶ 39} "VI. The trial court committed reversible error by allowing Ward to be impeached by a third-party's conviction that was more than ten years old."
 {¶ 40} The appellant argues that the lower court committed reversible error in admitting certain testimony, which allegedly amounted to an abuse of discretion. First, the appellant contends that the testimony of Tantlinger should have been excluded because Tantlinger testified as an expert witness; therefore, under Local Rule 21.1, the appellee was under a duty to supply the appellant with an expert report prior to trial.
 {¶ 41} Local Rule 21.1, part I(B) provides:
 {¶ 42} "[A] party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. It is counsel's responsibility to take reasonable measures, including the procurement of supplemental reports, to insure that each report adequately sets forth the expert's opinion. However, unless good cause is shown, all supplemental reports must be supplied no later than 30 days prior to trial. The report of an expert must reflect his opinions as to each issue in which the expert will testify. An expert will not be permitted to testify or provide opinions on issues not raised in his report."
 {¶ 43} Granted, if Tantlinger testified as an expert, then his testimony should have been excluded because no expert report was filed. However, in reviewing the record, the testimony of Tantlinger was not expert testimony; rather, his testimony merely reflected facts with regard to the companies for which he served as the receivership accountant. The testimony reflected accounting facts concerning the companies which Capwill mismanaged, not expert opinion testimony. The fact that Capwill commingled funds and assets of his companies and the transfer records from the various accounts was not the type of testimony which would require an expert opinion; rather, the testimony merely reflected the simple accounting tabulations routine to most businesses.
 {¶ 44} With respect to opinion testimony by lay witnesses, Evid.R. 701 provides:
 {¶ 45} "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 {¶ 46} In order to be admissible, opinion testimony, whether offered by a lay or expert witness, must assist the trier of fact in understanding the evidence or determining a fact in issue. Opinions are not helpful if the jury, unaided by the opinion, can draw the necessary and proper inferences from the facts. Weissenberger, Ohio Evidence, Section 701.4. In order to assist the trier of fact, the subject matter of the testimony must generally concern matters beyond the common knowledge, experience, and comprehension of ordinary lay persons. Weissenberger, Ohio Evidence, Sections 702.2, 702.3; State v. Daws (July 27, 1994), Montgomery App. No. 13914. The trial court has broad discretion in determining whether certain testimony will assist the trier of fact. Weissenberger, supra.
 {¶ 47} Clearly, the testimony of Tantlinger was offered to aid the trier of fact in understanding the business dealings and accounting practices of Capwill, which would understandably be outside the common knowledge, experience, and comprehension of the ordinary layperson. The fact that Tantlinger testified concerning the practices of Capwill and his companies does not automatically transform his testimony into that of an expert.
 {¶ 48} Moreover, and as noted by the appellee, the appellant was afforded ample opportunity to depose Tantlinger since his testimony was clearly key to the appellee's position. The fact that the appellant decided not to depose Tantlinger, or investigate the business records which Tantlinger relied on, was a tactical decision which cannot now form the basis of an alleged trial error. Last, the fact that Tantlinger did not produce each business document at trial is of no consequence to the appellant's position because he had the opportunity to inspect those records prior to trial. Moreover, Evid.R. 1006 permits the use of summary evidence at trial in an effort to aid in an efficient trial.[4]
 {¶ 49} The appellant further argues in his sixth assignment of error that the lower court erred in admitting testimony concerning Michael Stevens' prior convictions, which occurred more than 15 years ago. The appellant cites to Evid.R. 609(B) in support of his position. Evid.R. 609(B) states:
 {¶ 50} "(B) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of probation, or shock probation, or parole, or shock parole imposed for the conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. * * *"
 {¶ 51} Since Evid.R. 609(B) deals directly with the impeachment of a testifying witness using that witness's past conviction, it is clear that the appellant cannot invoke this evidentiary limitation in advancing his argument because the past conviction was not that of the appellant's; rather, the conviction was that of a business associate. In light of this, we can find no abuse of discretion in the admission of said testimony and find no merit in the appellant's sixth assignment of error.
 {¶ 52} The appellant's seventh assignment of error states:
 {¶ 53} "VII. The trial court committed reversible error by granting appellee's and third-party defendants' motion for summary judgment on Ward's counterclaim and third-party claims because Ward submitted undisputed facts in support of his claims for abuse of process, breach of contract, unjust enrichment and intended beneficiary."
 {¶ 54} The appellant's seventh assignment of error asserts arguments with regard to the trial court's granting of summary judgment in favor of third-party defendants Victor Javitch, Kenneth Banker and Javitch, Block, Eisen and Rathbone, PLL. The appellant's notice of appeal makes no mention of, nor does it assert any appealable order with regard to, the trial court's granting of summary judgment. Specifically, the judgment entry attached to the appellant's notice of appeal references only the jury's finding in favor of the appellant. Accordingly, this court is without jurisdiction to entertain said arguments contained in appellant's seventh assignment of error because said arguments were not raised in accordance with standing appellate rules.
Judgment affirmed.
ANN DYKE, P.J., CONCURS.
TERRENCE O'DONNELL, J., DISSENTS WITH SEPARATE OPINION.
[1] Victor Javitch was appointed by the U.S. District Court for the Northern District of Ohio to be the Receiver for Capital Funding Leasing, Viatical Escrow Services, and several other companies that were controlled by Capwill.
[2] The lower court took judicial notice of a finding by the U.S. District Court for the Northern District of Ohio in placing Capwill's companies in receivership. Specifically, "commingling of personal assets with that of his companies and clients, * * *, coupled with [Capwill's] intentional concealment of sources of funds concerning those assets, these acts have made it extremely difficult, if not impossible, to distinguish between the assets purchased with the money belonging to Capwill and assets purchased with funds properly belonging to * * *."
[3] The appellee attached duplicates of the original promissory notes to the instant complaint. There is no explanation as to the location of the original promissory notes.
[4] {¶ a} Evid.R. 1006 states:
{¶ b} "The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court."
{¶ c} The purpose of this rule is to allow the use of summaries when documents are unmanageable or when they would be useful to a jury. Exide Corp. v. Battery World, Inc. (May 1, 1986), Cuyahoga App. No. 50527, at 13.