OPINION
{¶ 1} Appellant, Iron City Uniform Rental and/or Industrial Uniform Rental, appeals the July 24, 2002 judgment entry of the Trumbull County Court of Common Pleas, in which the trial court found that appellees, Coate's Car Care, Inc. ("CCC") and Cozza, Inc., had not breached a contract between them and appellant.[1]
 {¶ 2} Appellant filed a complaint for breach of contract on November 17, 2000, in which appellant alleged that it was owed $25,598.20, as a result of appellees' breach of a written agreement.[2]
Appellees filed an answer on January 12, 2001. Thereafter, on May 29, 2001, appellees filed a motion to dismiss, which was overruled. A bench trial took place on May 1, 2002.
 {¶ 3} At the trial, the evidence revealed that appellant's business consisted of supplying personalized uniforms and related items to customers. Appellees had been customers of appellant since 1993. On January 25, 2000, appellant and appellees renewed their rental agreement under which appellant provided appellees with uniforms, floor mats, fender covers, and shop towels. According to appellant, the price of the contract was $215.98 per week, and the term of the contract was for five years or two hundred sixty weeks. Also, contained in the agreement was a premature cancellation clause, which stated that:
 {¶ 4} "7. Premature Cancellation. In the event of cancellation of this service agreement by the Customer prior to the termination date, the Customer will pay the greater of 50% of the weekly service charge per person per week for the unexpired term, or the replacement value for all the merchandise in inventory at the rates listed above."
 {¶ 5} Mr. Coates sent a letter to appellant stating that as of July 17, 2000, appellees would be terminating service with appellant.[3]
Specifically, the letter read as follows: "[a]s of July 17, 2000, I will be terminating my Iron City service. I appreciate your service, but I have decided to go [to] a National Account program. Thank you for your service in the past."
 {¶ 6} Kendall Scott Phillips ("Phillips") worked for appellant and testified that he serviced appellees' account for several years. He handled routine problems such as stains and missing buttons. According to Phillips, when appellees renewed the agreement, he felt they were happy with the service. Thus, when the contract was cancelled, he was surprised. Phillips also related that he did not discuss the premature cancellation paragraph with Mr. Coates. Phillips further stated that he handled any complaints made by appellees.
 {¶ 7} John J. Welling ("Welling") took the stand and related that he was the general manager of appellant. Welling stated that the agreement entered into between appellant and appellees is relied on by the financial communities because it is the "only way of telling * * * [the] financial institutions that, in fact, we are guaranteed a minimum amount of money for a specified period of time. Thus, they realize that, yes, we do have money coming in or we are guaranteed money coming in." He explained that the premature cancellation clause is standard within the industry. Welling further added that prior to the cancellation, he had no reason to believe that appellees were dissatisfied customers. According to Weller, there was no way to tell that the weekly invoices totaled $215.98. However, he stated that the value of new inventory would be $5,389.
 {¶ 8} Several witnesses testified on behalf of appellees. Beverly Fabery ("Fabery"), an employee of CCC of nine years, testified that she received complaints from employees about their uniforms. She forwarded these concerns to Mr. Coates. Regarding the uniforms, Fabery stated that she observed "[d]irty uniforms, torn uniforms. A lot of times the guys that work in the service and in the quick lube area, they would come in in their own street clothes because they didn't have uniforms. They weren't brought back from the previous week." Fabery further related that she mentioned her concerns to the driver who delivered the uniforms. She recalled also calling the company "on occasion" and speaking with a woman by the name of Sandy. According to Fabery these complaints continued for months.
 {¶ 9} Edmond Flakes ("Flakes"), also an employee of CCC, took the stand and related that he managed the quick lube and had been employed with CCC for four years. According to Flakes, when he was asked about appellant's service he stated that the uniforms "* * * were coming back not clean. You would like send out six uniforms. You might only get back two of what you sent in. * * * Stuff was missing off of `em like buttons, pockets, different things like that." Flakes also revealed that appellees' employees shared in the cost of the uniform service.
 {¶ 10} George Burggraf ("Burggraf"), an automobile technician with CCC, testified that at times the employees would have pants or shirts missing, and sometimes the uniforms were a little dirtier. He also revealed that these things began happening more regularly before appellee discontinued service with appellant. Burggraf expressed his displeasure to Mr. Coates, CCC's service manager, and also appellant's driver, Phillips. According to Burgraff, he mentioned his dissatisfaction to Phillips several times.
 {¶ 11} CCC's service manager, William S. Rushen, Jr. ("Rushen"), took the stand and related that he "had complaints all the time. I mean dirty uniforms, uniforms that were brought back and looked like they were, like he just picked `em up and put `em on hangers. Mine, some of `em weren't fitting right and some of `em were so faded it was unbelievable." He indicated that when he received complaints from employees, he forwarded them to Mr. Coates. Rushen also recalled speaking to Phillips "every week about complaints, and he would not [right] nothing wrong. He'd say he'd just take care of it and that's it." Rushen opined that the problem did not get better as 2000 progressed, but instead it got worse.
 {¶ 12} Mr. Coates testified as to the circumstances surrounding the renewal of the agreement with appellant. He mentioned that when Phillips arrived at CCC with the contract, it was sometime in January. He recalled that when he "signed it, [he] was working at the car wash. January is a busy time of the year * * *. [He] was literally working at the car [wash] drying off cars and [Phillips] came through and said, `Here's the contract.' [He] looked at it, signed it and obviously [Phillips] printed [his] name on it because * * * [he] didn't even really look at it." He mentioned that all of the items on the agreement were filled out and presented to him for signature. At that time, Mr. Coates stated he was satisfied with appellant's service. It was only after that time that he began receiving more complaints from employees. He voiced his concerns to Phillips, but he did not see any improvement over the next few months. It was only after Mr. Coates received numerous complaints and nothing changed that he decided to switch uniform companies.
 {¶ 13} In his letter to appellant, Mr. Coates stated that he appreciated their service. During the trial, he was asked why he said that and he replied that "[a]fter numerous attempts, talking to [P]hillips, [Fabery] answering the surveys when they called, calling [appellant], nothing was done. At that point, in my eyes, I was gonna make a change. They didn't make any attempt to correct anything at that time. I wasn't gonna go any further, okay, to make phone calls to them to say, `Hey, you know, my service isn't really good,' because they were notified by numerous employees and by a couple different avenues. So at that time, I didn't feel like I had to justify going into any specific reason why." He further stated that he tried to handle the situation in a "diplomatic" manner.
 {¶ 14} In a July 24, 2002 judgment entry, the trial court rendered a judgment against appellant and in favor of appellees and dismissed the action. It is from that entry that appellant timely filed the instant appeal and assigns the following as error:
 {¶ 15} "[1.] The trial court erred to the prejudice of [appellant] in not finding in favor of [appellant] and stating that it `cannot determine which party has the preponderance' after [appellant] proved unequivocally that there was a valid contract and [appellee] terminated the contract before its end date which then, shifted the burden to [appellee] who only produced enough evidence to hold the issue of breach in equipoise.
 {¶ 16} "[2.] The trial court erred in holding that a finding of `actual loss' was necessary before applying the formula in the liquidated damages clause."
 {¶ 17} Under the first assignment of error, appellant alleges that it met its burden of proof in showing the existence of a contract and that the burden was then shifted to appellees to demonstrate a breach of that contract.
 {¶ 18} A party bringing a cause of action for breach of contract must demonstrate the following: (1) the existence of a binding contract or agreement; (2) that the non-breaching party performed its contractual obligations; (3) that the other party failed to fulfill its contractual obligations without legal excuse; and (4) that the non-breaching party suffered damages as a result of the breach. Lapping v. HM HealthServices (Dec. 14, 2001), 11th Dist. No. 2000-T-0061, 2001 WL 1602683, at 3, citing Doner v. Snapp (1994), 98 Ohio App.3d 597, 600.
 {¶ 19} In the instant matter, appellee offered evidence that the foregoing elements were satisfied. The evidence demonstrated the existence of an agreement. However, appellee put on a number of witnesses to contradict appellant's evidence on the elements required which provided a competent, credible table of evidence to afford a basis for the trial court to conclude that appellant failed to meet its burden of proof as to whether there was a breach.
 {¶ 20} The Supreme Court has stated that although Civ.R. 15(B) allows for the liberal amendment of pleadings, that rule only applies when an amendment conforms to the evidence and when an issue has been tried by either the express or implied consent of the parties. Cooper v.Grace Baptist Church of Columbus, Ohio, Inc. (1992), 81 Ohio App.3d 728,735. See, also, Mayer v. Medancic (Dec. 21, 2001), 11th Dist. Nos. 2000-G-2311, 2000-G-2312, and 2000-G-2313, at 1, fn. 6. Here, it is apparent that the case was tried on the basis of a breach even though that was not pleaded.
 {¶ 21} In fact, the testimony revealed that several of appellees' employees complained about their uniforms. Further, Mr. Coates stated that the problems were not resolved even after repeated complaints and that is why he opted to discontinue service with appellant. Hence, since appellant has failed to prove performance on its part, it has not met its burden of proof that there was a breach by appellees. Appellant's first assignment of error lacks merit.
 {¶ 22} For the second assignment of error, appellant claims that the premature cancellation clause does not require a finding of actual loss before it is applied. Appellant further contends that public policy mandates that contracts between businesses be enforced.
 {¶ 23} In addressing appellant's second assignment of error, we conclude that the trial judge determined that based on the evidence appellant had the obligation to establish a breach of contract on the part of appellees. It is our view that the evidence supports the trial court's conclusion and establishes a breach on the part of appellant by failing to supply uniforms in an appropriate manner. Therefore, we will not address the issue of damages because it is moot.
 {¶ 24} For the foregoing reasons, appellant's first assignment of error is not well-taken, and the second assignment of error is moot. The judgment of the Trumbull County Court of Common Pleas is affirmed.
Judgment affirmed.
JUDITH A. CHRISTLEY and DIANE V. GRENDELL, JJ., concur.
[1] Jim Coates, Jr. ("Mr. Coates") is president of appellees, and he was dismissed as a defendant prior to trial.
[2] This figure was derived by taking the remainder of the term of the agreement, two hundred thirty-four weeks, multiplied by $215.98, times fifty percent. That amount totaled $25,269.66. However, merchandise totaling $328.54 was not returned to appellant. Hence, the amount sued for equals $25,598.20.
[3] Mr. Coates signed the letter, but it was not dated, so we are uncertain as to when appellant received it.